UNION PACIFIC RAILWAY COMPANY *v.* DANIELS.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 165. Argued and submitted March 13, 1894. — Decided April 16, 1894.

When a defendant, after the close of the plaintiff's evidence, moves to dismiss, and, the motion being denied, excepts thereto, and then proceeds with his case, and puts in evidence on his part, he thereby waives the exception, and the overruling of the motion to dismiss cannot be assigned for error.

A railroad company is bound to see to it, at the proper inspecting station, that the wheels of the cars in a freight train about to be drawn out upon the road are in a safe and proper condition; and if the servants to whom it delegates this duty perform it so negligently as to permit a car to go into service on the train, one of the wheels of which has an old crack in it some twelve inches long, filled with grease, rust, and dirt, but which could have been detected without difficulty, and in consequence of that wheel's giving way while the train is in motion an accident takes place by which another servant of the company is injured, the company is liable therefor.

THIS was an action brought by William Daniels against the Union Pacific Railway Company, in the District Court for

the Third Judicial District of the Territory of Utah, to recover damages for personal injuries alleged to have been sustained because of defendant's negligence. During the pendency of the writ of error in this court, Daniels died and his administrator was substituted.

The complaint alleged that plaintiff was an employé of the defendant company as brakeman on a freight train ; that the company by its negligence and carelessness allowed a wheel of one of its freight cars to become defective through a large open crack in it, which rendered the car unsafe ; that the crack was an old one, and could have been easily discovered by a proper inspection of the wheels; that it was the duty of the defendant to inspect the wheels of all cars used by it and running on its road, at stations at short intervals along the line of the road; that an inspecting station was established at Green River, Wyoming, at which point the defect would have been discovered had the company's inspection service at that point been suitable and sufficient; that the company negligently and wrongfully employed incompetent agents in that service; that they did not employ sufficient in number; that those employed negligently inspected; that the defect by which the accident and ensuing injuries were caused was not discovered by reason of the company's negligence; and that plaintiff, without fault or negligence on his part, was injured by the breaking of the defective wheel and the train being thereby thrown from the track.

The answer denied the essential averments of the complaint. Plaintiff recovered a verdict and defendant moved for a new trial, which was overruled, and judgment rendered, from which an appeal was prosecuted to the Supreme Court of Utah Territory, where it was affirmed. The opinion is reported 6 Utah, 357. To review that judgment this writ of error was sued out.

The errors assigned and relied on at the bar were that the court erred in overruling defendant's motion for a non-suit made at the close of plaintiff's testimony ; that the court erred in giving each of the following instructions :

" 8th. In this case, if you find that the plaintiff was injured

in consequence of the wreck of the train caused by a crack and break in one of the wheels of the car on a train operated by the plaintiff, if you find that by the exercise of proper care and caution in inspecting the wheels the crack was of such a nature that it might have been discovered by the agents or servants of the defendant employed for that purpose, then such neglect to discover the crack was negligence on the part of the defendant and for which it may be held liable in this action.

"9th. If you find that there was a want of care and diligence on the part of the persons engaged in inspecting the wheels of the cars of defendant, and that the accident was caused thereby, it is not a defence for the defendant to show that it used proper diligence and care alone and only in the selecting of such agents, but the defendant is responsible for the acts of his employés in repairing and inspecting machinery to the same extent as if he were himself present doing the act;" and that the court erred in refusing to give each of the following instructions requested by the defendant:

"Fourth. The plaintiff by his contract of hiring was held to assume the risks of injury from the ordinary dangers of the particular employment and the nature of the business engaged in, and if you find from the evidence that the accident causing the injury in question was one of the perils incident to the employment, your verdict should be for the defendant.

"Fifth. The presumption of the law in this case is that the defendant exercised proper care and diligence in employing a competent and sufficient number of servants to safely carry on its several departments of labor and in furnishing safe machinery and appliances with which the plaintiff was to do his work, and the burden of proof to show the contrary is on the plaintiff.

"You are further instructed that as between employer and servant, as in this case, negligence on the part of the former is not proven nor to be inferred from the existence of a defect which caused the injury.

"Sixth. Although the inspector of the defendant at Green River station, whose duty it was to inspect the said broken wheel, was guilty of negligence in making the inspection, and

that negligence resulted in the wrecking of the train on which the plaintiff was, and the injury of which he complains, still he cannot recover in this action unless it appears from the evidence that the defendant was guilty of negligence either in the appointment of such inspector or retaining him in his position, and to establish such negligence on the part of the defendant not only the incompetence of such inspector must be shown, but it must also be shown that defendant failed to exercise ordinary care to ascertain his fitness for that service prior to his appointment, or failed to remove him after his incompetency had come to the notice of the defendant or to some officer or agent of defendant having power to remove him, or after such incompetency could have been ascertained by the exercise of ordinary care on the part of the defendant or such agent or officer.

" Seventh. To render the negligence of the inspector whose duty it was to inspect the said broken wheel the negligence of the defendant, or to render the defendant liable therefor, it is incumbent on the plaintiff to prove that the said inspector was appointed to or retained in his said position with knowledge on the part of the defendant, or some officer or agent of it having the power of appointment and removal, that he was incompetent, or that such knowledge might have been obtained by the use of reasonable and ordinary care and diligence on the part of the defendant or of such officer or agent."

*Mr. Artemas H. Holmes,* (with whom was *Mr. John F. Dillon* on the brief,) for plaintiff in error.

*Mr. Arthur Brown,* for defendant in error, submitted on his brief.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

1. At the close of the plaintiff's evidence, the defendant moved to dismiss the complaint, which motion was denied, and defendant excepted. Thereupon the defendant proceeded

with its case and adduced evidence on its part. This waived the exception, and the action of the court in overruling the motion to dismiss cannot be assigned for error. *Columbia & Puget Sound Railroad* v. *Hawthorne,* 144 U. S. 202; *Brown* v. *Southern Pacific Co.,* 7 Utah, 288, 291.

2. The evidence tended to show that Daniels was a brakeman in the employment of the company, and in the discharge of his duties as such, April 3, 1887, on a freight train made up at Green River, and running thence westward; that he was ordered on top of the train to set the brakes at different points going down a long hill, and was so engaged when the train was suddenly wrecked, and he was severely injured; that a wheel on one of the cars of the train had an old crack in it, some twelve inches long, which rendered it unsafe; that the wheel gave way by reason of the fracture and thus the disaster occurred; and that, although the crack, being old, was filled with greasy dirt and rust, it could have been detected without difficulty if the wheel had been properly examined at Green River, which was an inspecting station, at which trains were made up.

Upon the inferences properly deducible from such evidence, the rule applied, which requires of the master the exercise of reasonable care in furnishing suitable machinery and appliances for carrying on the business for which he employs the servant, and in keeping such machinery and appliances in repair, including the duty of making inspections, tests, and examinations at the proper intervals. As observed in *Hough* v. *Railway Co.,* 100 U. S. 213, 218, the duty of a railroad company "in that respect to its employés is discharged when, but only when, its agents, whose business it is to supply such instrumentalities, exercise due care as well in their purchase originally, as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employés;" and the company "cannot in respect of such matters interpose between it and the servant, who has been injured, without fault on his part, the personal responsibility of an agent who, in exercising the master's authority, has violated the duty he owes, as well to the servant as to the corporation." *Hough* v. *Railway Co.,* and *Northern Pacific*

*Railroad* v. *Herbert*, 116 U. S. 642, to the same effect, were cited in *Balt. & Ohio Railroad* v. *Baugh*, 149 U. S. 368, 386, and it was said: " A master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools and the machinery, than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools, and the machinery owes a positive duty to his employé in respect thereto. That positive duty does not go to the extent of a guarantee of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employé by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore it will be seen that the question turns rather on the character of the act than on the relations of the employés to each other." And see *Fuller* v. *Jewett*, 80 N. Y. 46; *Rogers* v. *Ludlow Mfg. Co.*, 144 Mass. 198; *Spicer* v. *South Boston Iron Co.*, 138 Mass. 426.

There can be no doubt that under the circumstances of the case at bar the duty rested upon the company to see to it, at this inspecting station, that the wheels of the cars in this freight train, which was about to be drawn out upon the road, were in safe and proper condition, and this duty could not be delegated so as to exonerate the company from liability to its servants for injuries resulting from the omission to perform that duty or through its negligent performance.

The rulings of the court in giving the eighth and ninth instructions for plaintiff, and in refusing to give the sixth and seventh instructions requested on the part of defendant, were not, therefore, open to the exceptions taken. The sufficiency of the number of inspectors and their competency furnished no defence, nor the contrary, the ground of recovery, though some of the averments of the complaint may have indicated that cause of action.

The trial court charged the jury, among other things, that the defendant was required to "use a reasonable care, consistent with the nature and extent of the business, and provide proper machinery; but it is not responsible for hidden defects, which could not have been discovered by a careful inspection;" that "the burden of proof is in this case, as in all other cases like it, upon the plaintiff, to make out his case to your satisfaction. The law is well settled, both here and in England, our mother country, that the employer should adopt such suitable implements and means to carry on the business as are proper for that purpose; and where there are injuries to its servants, or its workmen, and they happen by reason of improper or defective machinery or appliances in the prosecution or carrying on the work which they are employed to render, the employer is liable, provided he knew, or might have known, by the exercise of reasonable skill, that the apparatus was unsafe and defective. If, by reasonable and ordinary care and prudence, the master may know of the defect in the machinery which he operates, it is his duty to keep advised of its condition, and not needlessly expose his servants to peril or danger;" that "in employing the plaintiff, the corporation defendant did not become an insurer of his life or his safety. The servant takes the ordinary risks of his employment. The duty of the defendant towards him was the exercise of reasonable care in furnishing and keeping its machinery and appliances, about which he is required to perform his work, in a reasonably safe condition. It was the defendant's duty also to use like ordinary care in selecting competent fellow-servants, and in a sufficient number, to insure that the work would be safely done; and this duty was discharged by the defendant

if the care disclosed by it in these several matters accorded with that reasonable skill and prudence and care which careful, prudent men, engaged in the same kind of business, ordinarily exercise."

And that, " as between employer and employé, between master and servant, as in this case, negligence on the part of the former is not proven, or to be inferred, simply from the existence or occurrence of the accident which caused the injury complained of."

The defendant had no reason to complain because the fourth and fifth instructions, which it asked, were not otherwise given than as contained in the views thus expressed by the court.                                    *Judgment affirmed.*

MR. JUSTICE JACKSON did not hear the argument, and took no part in the decision of this case.