### TEXAS & P. RY. CO. v. BARRETT.

(Circuit Court of Appeals, Fifth Circuit. February 5, 1895.)

#### No. 226.

1. NEGLIGENCE—DEGREE OF CARE REQUIRED.

Those who use and control such agencies of power and danger as a locomotive, charged with steam to propel trains of cars, must use such a measure of care and skill as will bear proportion to the consequences liable to follow from the want thereof.

2. SAME—RESPONSIBILITY OF MASTER.

Plaintiff, a foreman employed in the yard of defendant railway company, was injured by the explosion of a locomotive standing in the yard. Plaintiff's duties had nothing to do with the locomotive. It appeared that the explosion was due to the defective condition of some of the

stay bolts in the boiler, and there was evidence tending to show that such defects might have been discovered by proper inspection. The court instructed the jury, in substance, that the master is not the insurer of the safety of his engines, but is required to exercise only ordinary care, such as a prudent man would use, to keep them in good repair; and that if the jury believed that the boiler which exploded was defective, and the defendant's servants, by reasonable care, might have known of such defects, then the defendant would be responsible. It refused to give instructions, asked by defendant, to the effect, in substance, that if the defendant used ordinary care in the selection of the engine, and in the selection of a competent man to inspect it, and such inspector negligently failed to discover or report the defects in the engine, the defendant would not be liable. *Held* no error.

In Error to the Circuit Court of the United States for the Northern District of Texas.

This was an action by W. K. Barrett against the Texas & Pacific Railway Company, to recover damages for personal injuries. The plaintiff recovered a judgment in the circuit court for $3,800. Defendant brings error.

The defendant requested the court to give the jury the following instructions: "(1) You are instructed that if you believe from the evidence that defendant used ordinary care in the selection of the engine in question, and used the same care in the selection of a competent man to inspect it and keep it in reasonably safe condition, and if you believe from the evidence that the person so employed to inspect said engine and keep it in repair did exercise ordinary care in its inspection and keeping it in good condition, you will find for the defendant. (2) You are instructed that if the defendant used due care in the selection of the inspector, Stevenson, and exercised reasonable supervision over him, and that said Stevenson negligently failed to properly inspect the engine in question, so that in consequence of such failure on his part the explosion in question occurred, his omission of care would be the negligence of a fellow servant, for which the defendant would not be responsible. (3) You are instructed that if you believe from the evidence that the defendant originally provided a reasonably safe engine, and that it used reasonable care to employ a competent inspector to keep said engine in repair, and that it used reasonable supervision to see that such inspector performed his duty, you will find for defendant. (4) You are instructed that the presumption is that the defendant performed its duty in respect to furnishing a reasonably safe engine, and in respect to keeping same in reasonably safe repair, and that it devolves upon the plaintiff to establish by a preponderance of the evidence that defendant failed to discharge its duty either in supplying such engine or in keeping it in good condition. (5) Defendant asks the court to instruct the jury herein to return a verdict for the defendant." The above special instructions, which were separately presented and asked, the court refused, and the defendant excepted.

The court charged the jury at the request of defendant as follows: "You are instructed that the master is not the insurer of the safety of its engines, but is required to exercise only ordinary care to keep such engines in good repair, and if he has used such ordinary care he is not liable for any injury resulting to the servant from a defect therein not discoverable by such ordinary care. You are instructed that the mere fact that an injury is received by a servant in consequence of an explosion will not entitle him to a recovery, but he must, besides the fact of explosion, show that it resulted from the failure of the master to exercise ordinary care in selecting such engine or in keeping it in reasonably safe repair. You are instructed that a railway company is not required to adopt extraordinary tests for discovering defects in machinery, which are not approved, practicable, and customary; but that it fulfills its duty in this regard if it adopts such tests as are ordinarily in use by prudently conducted roads engaged in like business and surrounded by like circumstances." And in its general

charge as follows: "In this case the jury are instructed that plaintiff sues defendant for twenty thousand six hundred ($20,600) dollars damages, which he says he has suffered by reason of injuries inflicted on him at Fort Worth, Texas, on February 19, 1893, by the explosion of a locomotive engine operated by defendant. Plaintiff in his pleadings says that said engine and its boiler were defective, in this: That many of the stay bolts in the boiler were broken, and that bands of many of the stay bolts were worn and corroded by rust; that the sheets of many parts of said engine and its boiler were corroded and eaten away by rust; that said defects in said engine and boiler were known to defendant before said explosion, or could have been known had it exercised proper care in the inspection thereof. (2) Plaintiff says that by the explosion of said boiler he was seriously and permanently injured in and about the legs, hips, shoulders, spine, etc. That as a result of said injury plaintiff suffered, now suffers, and will continue to suffer all his life under physical and bodily pain and great mental anguish. That he has expended $500 on account of his injuries. That when injured he was earning $100 per month. That since said injuries, and by reason thereof, he has been unable to pursue any business in the line of his occupation. (3) A railway is bound to use ordinary care to furnish safe machinery and appliances for use by its employés in operating its road, and, if ordinary and reasonable care is not exercised by the company to do this, it would be responsible for the injuries to its servants caused by such neglect. The neglect of the servant to whom the company intrusted such duties is the neglect of the master. By 'ordinary care' is meant such as a prudent man would use under the same circumstances. It must be measured by the character and risks of such business; and where such persons, whose duty it is to repair the appliances of the business, know, or ought to know by the exercise of reasonable care, of the defects in the machinery, the company is responsible for his neglect. (4) If the jury believe from the evidence, under the foregoing instructions, that the boiler which exploded and injured the plaintiff was defective and unfit for use, and that defendant's servants, whose duty it was to repair such machinery, knew, or by reasonable care might have known, of such defects in said machinery, then such neglect upon the part of its servants is imputable to the defendant, and if said boiler exploded by reason of said defects, and injured the plaintiff, the defendant would be responsible for the injuries inflicted upon plaintiff, if plaintiff in no way, by his own neglect, contributed to his injuries. (5) An employer of labor, in connection with machinery, is not bound to insure the absolute safety of the mechanical appliances which he provides for the use of his employés, nor is he bound to supply for their use the best and safest and newest of such appliances, but is bound to use all reasonable care and prudence for the safety of those in his service, by providing them with machinery reasonably safe and suitable for use, and the like care devolves upon the master to keep it in repair. (6) The burden of the proof is on the plaintiff throughout this case to show that the boiler and engine that exploded were improper appliances to be used on its railroad by defendant; that by reason of the particular defects pointed out and insisted on by plaintiff the boiler exploded and injured plaintiff. The burden is also on plaintiff throughout to show you the extent and character of his sufferings, and the damages he has suffered by reason thereof. You must also be satisfied that plaintiff was ignorant of the defects in the boiler that caused its explosion (if the evidence convinces you that such were the case), and that he did not by his negligence contribute to his own injury."

On the 19th day of February, 1893, W. K. Barrett, the appellee, who was plaintiff in the court below, was in the employ of the Texas Pacific Railway Company in the capacity of a night fireman of a switch engine, then and there in use in the yards of said company at Ft. Worth. On the night of that day the company, by its employés, placed upon a track upon said yard a locomotive engine, with steam up, to take out a train. While appellee was standing near this engine in the yard it exploded, blowing him a considerable distance from the place he was standing. He was struck by a part of the engine's jacket, scalded, and was seriously and permanently injured. He alleges that said explosion and injury to him were caused by defendant's negligence in failing to furnish a safe and suitable engine, and that the

explosion of said engine resulted from the defective, weak, and unsafe condition in which it was at and before the explosion. It is charged that many of the stay bolts in the boiler of said locomotive were broken; that it was out of repair; that the heads of many stay bolts were corroded by rust, and that the boiler could not bear and stand the pressure of steam; and that the defendant, at and before the time of the explosion, was and had been negligent and careless in not properly inspecting and causing the boiler on said engine to be properly repaired; and that the defendant knew, or ought to have known, that the engine was in a dangerous and unsafe condition. The defendant company answers by a general denial, and says, if the plaintiff was injured as he claims, it resulted from and was caused by the negligence of his fellow servants; and, further answering, it avers that it exercised due care in the selection of the engine alleged to have exploded, and in keeping it in a reasonably safe condition and good repair; that it used due care in the selection, employment, and retention of competent and skillful servants to inspect said engine from time to time, and to keep same in good repair, and that to such servants was committed the inspection of said engine, and the keeping of same in good condition and repair, defendant exercising over them such supervision and control as to render reasonably sure the faithful and efficient performance of said duties, and that defendant used all the care that the law required in respect to the procurement and keeping in good condition and repair said engine; and this defendant is ready to verify. Further answering herein, defendant avers that the person to whom it committed the duty of inspecting said engine, and keeping same in good repair and condition, carefully inspected same, and kept same in good repair and condition; and this defendant is ready to verify.

T. J. Freeman, for plaintiff in error.

W. S. Simkins, for defendant in error.

Before McCORMICK, Circuit Judge, and BRUCE and TOULMIN, District Judges.

BRUCE, District Judge (after stating the facts). The leading fact in the case is the explosion of the boiler while the locomotive was at rest, standing in the yard of the company, with no extra pressure of steam, waiting to take out a train. How is this explosion to be accounted for? Can it be done on the theory of inevitable accident, which prudence and care could not reasonably have guarded against? Effects like this must have a cause, and the science of physics is in aid of an effort to discover the cause. Soon after the explosion a number of persons, whose testimony is in the record, came upon the yard where the explosion took place, and made examination of the pieces and broken fragments of the boiler, and their testimony tends to show, if it does not fully establish, that the boiler of the locomotive at the time of the explosion, and for a considerable time before that, was and had been in a weak and unsafe state, by reason of the condition of the stay bolts, many of which had been broken before the explosion, some of them for a long time before, as appeared from their rusted and corroded condition. It also appears that there are well known modes of testing the condition of stay bolts in a boiler engine, and the testimony is to the effect that, if any of these tests had been properly applied to the boiler within a reasonable time before the explosion, the true condition of the stay bolts would have been discovered. It is true there is some conflict in the testi-

mony of the witnesses for the plaintiff in the court below and the testimony of the defendant's witnesses, but it was submitted to the jury, and the question here is whether the finding of the jury was had under proper instruction from the trial judge as to the law of the case.

The plaintiff in the court below, appellee here, was, at the time of the injury complained of, an employé of the defendant company, but not in any way in charge of that particular locomotive upon which the boiler exploded. He was standing near this engine at the time in the discharge of his duties to the company, and the question arises as to the measure of duty the defendant company owed him under the circumstances. A locomotive charged with steam to propel trains of cars is a dangerous machine, and the duty imposed upon the defendant company which it owed to its employés is that due care should be used; that it is kept and maintained in a safe and proper condition; and the measure of skill and care required of those who use and control such agencies of power and danger must bear proportion to the consequences liable to follow from the want of such care and skill.

In Hough v. Railway Co., 100 U. S. 218, the court, after stating the general rule exempting the master from liability to a servant for injuries caused by the negligence of a fellow servant, say:

"But the obligation still remains to provide and maintain in suitable condition the machinery and apparatus to be used by its employés, and the obligation the more important and the degree of diligence the greater in proportion to the danger which may be encountered. Those, at least, in the organization of the corporation who are invested with controlling or superior authority in that regard represent its legal personality. Their negligence, from which injury results, is the negligence of the corporation. The latter cannot, in respect of such matters, interpose between it and the servant, who has been injured without fault on his part, the personal responsibility of an agent who, in exercising the master's authority, has violated the duty he owes, as well to the servant as to the corporation."

Other authorities might be cited in which the principles applicable to cases of this character are announced and applied. Railroad Co. v. Herbert, 116 U. S. 647, 6 Sup. Ct. 590; Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184; Railroad Co. v. Daniels, 152 U. S. 688, 14 Sup. Ct. 756.

In the case last cited the court says, quoting with approval:

"The law is well settled, both here and in England, our mother country, that the employer should adopt such suitable implements and means to carry on the business as are proper for that purpose. * * * If, by reasonable care and prudence, the master may know of the defect in the machinery which he operates, it is his duty to keep advised of its condition, and not needlessly expose his servants to peril or danger."

There may seem to be some want of harmony in the decided cases upon this subject. The language of courts in the opinions delivered is sometimes shaded by the facts in the particular case then under consideration, and thus may sometimes give rise to an apparent difference in the rules applied when none really exists.

The charges Nos. 1, 2, 3, 4, and 5, requested by the defendant,

and separately presented, asked, and refused by the court, to which ruling exception was taken, were properly refused. The defendants then excepted to specified portions of the main charge given by the court. We find no error in the rulings of the court, either as to the charges given or refused, and the judgment of the court below is affirmed.