**MARKAR v. NEW YORK, N. H. & H. R. CO.**
**RAKOWSKI v. SAME.**
Nos. 396, 397.

Circuit Court of Appeals, Second Circuit.
May 6, 1935.

E. R. Brumley, of New York City, for appellant.

Williamson, Willis, Lister & Foster, of Bridgeport, Conn. (John J. Welsh and Matthew J. Lyons, both of Brooklyn, N. Y., of counsel), for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Katherine Markar, administratrix, and Joseph Rakowski, appellees, sued 'for loss of life of the former's intestate, and for personal injuries to the latter which were occasioned by the collision of a motorcar, in which both were passengers, and a train, on January 18, 1933, at 6:30 p. m., while cross-

ing the appellant's railroad tracks on Columbia avenue in the town of Willimantic, Conn. It was a regular passenger train proceeding east. At the time, it was dark. The roadbed had a single track running east and west; the highway running northeast and southwest. The railroad tracks crossed the highway at a 22°39′ angle. It is a twenty-foot concrete highway, much traveled, and appellant was directed by the Public Utilities Commission to install and put in operating condition visible signals. Since that order, traffic had increased considerably. It had a railroad crossing sign 18 feet above the ground, and a blinker light on the right hand side of the highway 7 feet 2 inches above the ground. Another blinker light was maintained on the opposite side of the track. There were no obstructions to a view up the track from which the train came.

As they approached the railroad track, they were following a large covered truck— 9 feet high and 7½ feet wide—and remained from 12 to 15 feet to its rear. Appellees' witnesses say that this obstructed the view of the blinker light on the side from which the train came. The appellees' intestate and appellee Rakowski knew of the crossing and were on the lookout for the blinker light. Their motorcar undertook to pass the truck on the highway, but motorcars coming in the opposite direction prevented their doing so. When they passed the blinker light, which was positioned 40 feet from the crossing, they stopped about 7 to 10 feet from the tracks, and looked in both directions. The large truck in front of them sped across the track, but, as the motor car proceeded, it was struck at the crossing by the locomotive.

Appellees' witnesses say the headlight was not lit on the locomotive, and no signal of the train was sounded, although those in the motorcar were listening intently. The evidence was contradictory as to whether or not the headlight on the locomotive was lighted, and whether or not a whistle was blown, or bell rung, for the crossing. The court submitted to the jury claims of negligence as follows:

(1) Failure to have a headlight;

(2) Failure to ring a bell or sound a whistle;

(3) Failure to keep a proper lookout for the crossing by the engineer or fireman;

(4) Failure adequately to protect the crossing, which the court said might be found by the jury to be extrahazardous, and in the protection of which the appellant might have done something over and above what the Public Utilities Commission required;

(5) In negligently operating its train across the highway crossing at an excessive rate of speed; and

(6) That negligence might be predicated upon speed, even though the appellant gave the statutory signals, had headlights burning, and furnished blinker lights on the highway.

The court charged that recovery might be had on any one of these six allegations of negligence, and, if the plaintiff established by a fair preponderance of evidence, that the appellant was guilty of any one of the six claims, they might find it liable, providing that the negligence was the proximate cause of the collision. The court charged: "If you shall find that the plaintiff has established by a fair preponderance at least one ground of negligence on the part of the defendant which was a direct cause of the accident, * * * then your verdict should be in each case for the plaintiff. * * *"

At the end of the testimony, the court denied the motion of the appellant to dismiss the claim of negligent operation of the train because of excessive speed. The speed of the train was 60 miles per hour. There were no restrictive orders against speed by the Public Utilities Commission. We think that the claim of excessive speed was not proven, nor should the court have permitted the jury to find the appellant negligent by reason of the speed of the train. Bassett v. Delaware & H. Co. (C. C. A.) 62 F.(2d) 74; L. I. R. R. Co. v. Darnell, 221 F. 191 (C. C. A. 2). To be sure negligence may be predicated upon a failure to observe a custom to slow down trains at a particular crossing (Miller v. Union Pacific R. Co., 290 U. S. 227, 54 S. Ct. 172, 78 L. Ed. 285) but such claim of fault is presumably only one based upon peculiar circumstances concerning a railroad crossing. Canadian Pacific Ry. Co. v. Slayton, 29 F.(2d) 687 (C. C. A. 2); Boston & Maine R. v. Daniell, 290 F. 916 (C. C. A. 2).

It was also error to permit the jury to find negligence because of a failure to keep a proper lookout. The court had already left to the jury the question of failure to have the locomotive

284

properly equipped with lights and the failure to ring a bell or blow a whistle. A lookout, if he observed the crossing, could, at best, have seen the motorcar stop temporarily and then proceed directly across the track. It was not shown that the train could have been stopped within the distance that it traveled from the time the motorcar proceeded after it had stopped until it came into collision with the locomotive. There was no evidence to indicate that the appellees were in peril or that the appellant ought to have known of their peril. The engineer and fireman could not reasonably have apprehended that the motorcar was going to start from the position where it had stopped. The engineer approaching a railroad crossing has a right to assume that the driver will not place himself in a position of danger by driving across. Gray v. Missouri Pacific Ry. Co., 23 F.(2d) 190 (C. C. A. 6); Auvil v. Western Md. Ry., 19 F.(2d) 30 (C. C. A. 4). Unless a proper lookout would have enabled the train crew to have avoided the accident, there is no negligence.

Appellant complains that the court should not have permitted the jury to find as an element of negligence that the crossing was insufficiently protected. The blinker at the crossing was installed in 1923 pursuant to the order of the Commission, and the appellees claim that while it might have been sufficient at that time, with the increase in traffic over this highway it was insufficient at the time of the accident. The highway is a main route and a short cut to Hartford, New Haven, and shore points, and was a road used by four bus lines and many school buses. It was contended by the appellees that appellant should have known that motorists are often behind large trucks, as appellees were at the time in question, thus making it impossible to see the light on the blinker at the right-hand side of the highway, and that there should have been another blinker on the opposite side as they proceeded. In other words, that on a much traveled highway resulting in a dangerous crossing, blinker lights on both sides of the highway, or in the middle of the highway, or at a greater height above the highway, might be found to be necessary by a jury,

or that an electric warning bell, flagman, or gates were necessary. The proof upon the trial may be supplemented sufficiently to indicate heavy traffic and such use of the highway as to permit a jury to find an extrahazardous crossing requiring a higher degree of protection, either by means of an electric bell, gates, or flagman. Pokora v. Wabash Ry. Co., 292 U. S. 98, 54 S. Ct. 580, 581, 78 L. Ed. 1149, 91 A. L. R. 1049; Panama R. R. Co. v. Pigott, 254 U. S. 552, 41 S. Ct. 199, 65 L. Ed. 400; Grand Trunk Ry. of Canada v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485; Lehigh V. R. R. Co. v. Ciechowski (C. C. A.) 10 F.(2d) 82; Pratt, Read & Co. v. N. Y., N. H. & H. R. R. Co., 102 Conn. 735, 130 A. 102. But the present record does not justify such a finding. As said in Pokora v. Wabash Ry. Co., supra: "Indeed, the statutory signals did not exhaust the defendant's duty when to its knowledge there was special danger to the traveler through obstructions on the roadbed narrowing the field of vision." The statutory provisions may not constitute the maximum measure of care demanded of a railroad company. Jarrett v. Wabash Ry. Co., 57 F.(2d) 669 (C. C. A. 2); Kowalski v. Chicago Great Western Ry. Co. (C. C.) 84 F. 586; Chicago & N. W. R. R. Co. v. Netolicky (C. C. A.) 67 F. 665.

There passed over this single-track crossing, eight schedule trains a day. It was located in the country, three miles from the city of Willimantic. Approaching the track, the traveler had no obstruction and could see in either direction a distance of 1,000 feet. In the cases we have referred to, there was some obstruction to vision. Moreover, the amount of travel over this crossing, as disclosed by evidence, is indefinite and would not permit a jury to find that more protection was necessary than that which concededly existed at the crossing. It is estimated that traffic increased 15 per cent. over that which prevailed when the Public Service Commission issued its order as to signals at the crossing. What it was then or what it is now, was not proved. It was error to permit the jury to find negligence based upon an insufficiently protected crossing.

Judgments reversed.